## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Chicago Teachers Union,          ) | |
|                    ) | |
|      *Plaintiff,*       ) | |
| v.                    ) | |
|                    ) | Case No. |
| Betsy DeVos, in her official capacity  ) | |
| as the Secretary of the United States  ) | |
| Department of Education;       ) | |
| United States Department of Education;  ) | |
| and Board of Education of the City of  ) | |
| Chicago,                 ) | |
|                    ) | |
|      *Defendants.*   ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF

**Introduction**

1.      The plaintiff Chicago Teachers Union ("CTU") brings this action for emergency injunctive relief on behalf of its members who are case managers, teachers, clinicians and others who provide instruction to children who have special education needs pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*., or who otherwise fall under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*  On behalf these members, and so that they can continue to provide a free and appropriate education to the students they serve, CTU seeks an injunction barring the defendant Secretary DeVos and the defendant United States Department of Education from enforcing *without the waiver authorized by Congress* the regulatory provisions set out at 34 C.F.R. § 300.324(b)(1)(i)-(ii),  which require the defendant Board of Education to review and revise individual education plans ("IEP") of students. This suit seeks to effectively require a waiver of that provision in response to the conditions caused by the current public crisis in so far as in the absence of a waiver, the

plaintiff's members would be required to conduct a whole scale redrafting of what is believed to be roughly 60,000 existing IEP's and Section 504 plans for children in the Chicago public schools.

2.      As set forth below, on April 27, 2020, in a final agency action, defendant Secretary DeVos submitted to Congress a report that refused to exercise the specific authority granted to her by Congress in Section 3511 of the Coronavirus Aid, Relief and Economic Security Act ("CARES Act") to consider and waive where appropriate those requirements under the IDEA and Section 504 that impose unnecessary or impossible regulatory burdens on large school districts that are in remote learning.

3.      As a result, the Chicago Board of Education has deemed that compliance with 34 C.F.R. § 300.324 requires revision of approximately 56,000 IEP's and what is believed to be 10,000 Section 504 plans in formal conferences or similar measures with roughly six weeks left in the school year.

4.      CTU seeks a temporary waiver of that requirement so that its members can devote their working hours to providing the actual instruction needed to ensure that the students they serve receive a free and appropriate education, on the terms already set forth in their respective IEP's and Section 504 plans, rather than devote that time to reviewing and revising those plans in remote conferences, and without any clear expectation of what learning environment those plans will be applied in during the next school year.

5.      Accordingly, in violation of Section 706(2)(A) of the Administrative Procedure Act, 5 U.S.C. § 706, the Secretary and defendant United States Department of Education have acted arbitrarily and capriciously, and abused the discretion granted by the CARES Act to temporarily waive these requirements because the defendants have unreasonably failed to

consider the special circumstances and hardships imposed on case managers, teachers and others in large school districts like Chicago to revise in excess of 60,000 plans and in doing so divert if not prevent these CTU members from carrying out their primary mission of giving the services already set out in the existing plans in this difficult remote learning environment. Plaintiff seeks temporary and permanent injunctive relief barring the enforcement of any regulatory provision, including 34 C.F.R. § 300.324, that interferes with the education of these children in order to pursue an unnecessary regulatory objective.

**Parties**

6. Plaintiff Chicago Teachers Union is a labor organization representing teachers and staff in the Chicago public schools, including the case managers, teachers, clinicians and others who provide special education services to children covered under IEP's and Section 504 instructional plans.

7. Defendant Betsy DeVos is sued in her official capacity as Secretary of the United States Department of Education.

8. Defendant United States Department of Education (Department) is the federal agency responsible for enforcement of the Individual Disabilities with Education Act (IDEA) and Section 504 of the Rehabilitation Act of 1973 and has authority to adopt, revise and waive the implementing regulations under such laws.

9. Defendant Board of Education of the City of Chicago is a body politic and corporate responsible for the administration of the Chicago public schools and is joined here as an indispensable party defendant for purposes of injunctive relief.

**Jurisdiction**

10.     This Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question), and 28 U.S.C. § 1346 (United States as defendant).  Plaintiff's claims arise under the laws of the United States, including the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, and provisions of the Individuals with Disabilities Education Act and Section 504 and their implementing regulations, including 34 C.F.R. § 300.324 and Section 3511 of the CARES Act.

11.     Venue lies in this judicial district because the implementing regulations of the IDEA and Section 504 are being enforced in this judicial district, and the legal injury threatened to the members of the plaintiff CTU will occur in this judicial district.

**Facts**

12.     The March 2020 closing of classrooms and in-class teaching in the Chicago public schools has required a difficult transition to a remote learning environment, and has been especially difficult for CTU members who provide services to children with special education needs covered under previously established IEP's and Section 504 plans.

13.     These plans were usually established at the beginning of the school year, or at other appropriate times, and involved detailed consultation by and among case managers, teachers, clinicians and other staff, and involved formal conferences with the parents or guardians of each student.

14.     The closing of live class room instruction and face-to-face interaction with these children arose suddenly and with little time to adjust the plans for providing the same or equivalent level of services in a remote learning environment.

15.     Many of these students will likely need compensatory education services because of the interruption to their education, and CTU strongly supports the creation of a compensatory

education fund to pay for additional services including tutoring, therapeutic camps, and technology supports.

16.     Under the implementing regulations of the IDEA administered by the defendant Secretary, every public agency including the Chicago Board of Education must ensure that each individual IEP Team must revise IEP's "as appropriate" to address the anticipated needs of the respective student, along with addressing "other matter."

17.     In adopting the CARES Act to deal with the pandemic emergency, Congress gave explicit authority to the defendant Secretary of Education under Section 3511 of the Act to waive the above-mentioned "review requirement" or any other requirement that the defendant Secretary deemed necessary or appropriate to do, and to report back her final agency action to Congress.

18.     On April 27, 2020, the defendant Secretary submitted a report of her recommended actions in which she declined to exercise the waiver authority with respect to the above regulation, 34 C.F.R. § 300.324(b)(1)(ii) requiring the revision of IEPs; nor did she waive any requirement with respect to Section 504 plans.

19.     On April 28, 2020, following the Secretary's final action, the Chicago Public Schools Office of Diverse Learning Supports and Services issued a document entitled "Special Education Guidance to Remote Learning Procedures, Standards and Instructional Quality" (ODLSS Guidance).

20.     In evident reference to the Secretary's final agency action as to waiver, the CPS Office's ODLSS Guidance at page 4 puts in place certain requirements, including that:

a.   CPS case managers are required to review and every student IEP and Section 504 plan, and in its place draft "an appropriate remote learning plan;"

b. A formal conference must be convened with every parent/guardian for the purpose of drafting a Remote Learning Plan for every student with an IEP or 504 Plan.

21. As set out above, this directive poses an impossible burden to carry out in the roughly six weeks left in the school year.

22. There are approximately 51,850 students who have previously established IEP's that would have to be revised in a detailed and formal process, and there is believed to be an additional 10,000 or more students under Section 504 plans that would also have to be revised.

23. Under the defendants' combined regulations and policies, the CTU members responsible for these plans must review and draft plans, schedule and participate in conferences, and complete in excess of 60,000 modifications in the roughly six weeks of the remaining school year.

24. CPS's implementation of the Department's regulatory burden would be impossible to achieve, and would divert the CTU members from their mission of providing the services called for in the existing plans in the current remote learning environment.

25. As such the Secretary's action to decline to exercise her authority under Section 351 of the CARES Act will cause a particular concrete injury to the case managers, teachers, clinicians and other CTU members by impeding them in the continuation of services in the existing plans.

26. Aside from being impossible to accomplish, and from threatening to interfere with the provision of the special education services needed by these children, the redrafting of roughly 70,000 plans is highly like to increase the anxiety and emotional distress of parents or guardians and that will further complicate the revision of these plans.

**Count I**

**Violation of Section 706 of the Administrative Procedure Act**

27.    Under Section 706(1) of the APA, 5 U.S.C. § 706(1) this Court may "compel agency action [when it is] unlawfully withheld or unreasonably delayed."

28.    Under Section 3511(a) of the CARES Act, Congress gave the defendant Secretary a grant of authority to waive any regulation under the IDEA or Section 504 "if the Secretary determines that such a waiver is necessary and appropriate due to the emergency … with respect to the Coronavirus Disease 2019 (COVID-19)."

29.    In violation of Section 706(2)(A) of the APA, defendant Secretary acted arbitrarily and abused her discretion under Section 3511(a) of the CARES Act by failing to waive any requirement to redraft tens of thousands of education plans under 34 C.F.R. §300.324(b)(1)(ii).

30.    In particular, in violation of Section 706(2)(A) of the APA, the defendant Secretary and Department have acted arbitrarily and capriciously in failing to take account of the circumstances that require different treatment of the Chicago public schools, where there are in excess of 60,000 such plans to be revised, as opposed to the thousands of other school districts across the country with a much smaller number.

31.    In further violation of Section 706(2)(A) of the APA, the defendant Secretary and Department also failed to act in accordance with the law, and specifically the IDEA, when they failed to waive a regulation that will divert teachers and staff from the work of teaching and providing services, and as such will likely deprive their students of the free and appropriate public education required by the IDEA.

32. The action of the Secretary and Department in the April 27, 2020 report to Congress is a final agency action within the meaning of the APA and is ripe for review and for the emergency injunctive relief sought below.

33. As set forth above, the members of plaintiff CTU are aggrieved by this final agency action of the defendant Secretary and Department in that these members will be diverted into complying with this impossible burden and losing the valuable time they would otherwise spend in the instruction of the children under their care.

34. Accordingly, the members of the plaintiff CTU are not just aggrieved by this agency action but are likely to suffer irreparable injury unless the defendant Secretary and Department are barred from enforcing a regulation that creates such special burden on them as teachers and staff in the Chicago public schools.

35. CTU is also likely to succeed on the merits of this legal claim, and the balance of hardships and the interests of the children weigh heavily in favor of injunctive relief since the need for full attention to these students is urgently required and the IEP's and 504 plans can be revised later at the start of the next school year when such remote learning is likely to continue.

WHEREFORE, plaintiff CTU prays this Court to:

A. Issue temporary restraining order and preliminary and permanent injunctive relief against the enforcement by the Secretary and Department of any regulation that obliges or arguably obliges the Chicago Board of Education to revise IEP and Section 504 plans for the purpose of remote learning for the rest of the current academic year;

B. Issue such temporary restraining order and preliminary and permanent injunctive relief against the Board of Education of the City of Chicago from acting to require such revision of existing IEP and Section 504 Plans for the rest of the academic year;

C.  Grant plaintiff such further relief as may be necessary to suspend or cause the waiver of any regulation requiring the redrafting of these plans in the period remaining in the current academic year; and

D.  Grant plaintiff its legal fees and costs under the Equal Access to Justice Act.


Date:   May 19, 2020                      By:    /s/ Thomas H. Geoghegan


Thomas H. Geoghegan
Michael P. Persoon
Will Bloom
DESPRES, SCHWARTZ & GEOGHEGAN, LTD.
77 W. Washington St., Ste. 711
Chicago, Illinois 60602
Ph:    (312) 372-2511
Fax:    (312) 372-7391
admin@dsgchicago.com